Paul M. Wach #27714
U.S.C. F. B4 F2 214 B
P.O. Box 165300
SLC, UT 84116
PETITIONER/INCARCERATED



# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Paul Michael Wach ,<br>Petitioner,<br><br>v.<br><br>Custodian: Warden Robert Powell,<br>Respondents | Petitioners response to respondents motion to dismiss and memorandum in support.<br><br>Case No. 2:22-CV-00048<br><br>Judge: Dale Kimball |



*FOOTNOTE: Respondent, now, custodian Warden Robert Powell. Respondents, name change is as per Judge Dale Kimball's direction. Former respondent was: Utah Department of Corrections, Utah Board of Pardons, et.al.*

## Legal Standard:

Petitioner is in custody based on a state, federal and constitutional law violations and hereby brings forth his claim for relief, due to the fact that he is in custody in violation of the Constitution and Laws of the United States of America.

28 U.S.C.A § 2241(c) (3).

The Petitioner will show that Respondents have violated his rights under the United States Constitution, Federal, and State Law.

## Statement of the Case:

Petitioner is not attempting to argue for a right to parole. Petitioner is arguing that the Board of Pardons and Parole and its members violated his right to due process during his parole violation hearing. Petitioner is arguing that the Board withheld serious, and false allegations from the Petitioner (of which he was never convicted of or even charged for) before, during, and after the parole violation hearing in 2014, rendering Petitioner defenseless whilst the Board made a biased decision forcing him to be wrongfully incarcerated for a lengthy 140 months. Petitioner, if adequate due process was followed, would have throughly demonstrated that the allegations are unfounded, and false.

## Statement of Facts Relevant to the Issues presented:

The Board and its five members considered the allegations before the parole violation hearing and chose to withhold the information from Petitioner through omittance from the "blue packet" before the hearing, Labrum v. Board of Pardons, 870 P.2d 902 (Utah 1993) during the hearing, and afterwards during Petitioners multiple attempts at trying to acquire the information. Please note that the false allegations in question were not in the two letters (in which Respondent notes in her argument) that they provided Petitioner during the 2014 parole violation hearing. The two letters that were presented are irrelevant to the case as they did not contain the allegations nor the comments.

Petitioner discovered the information through his assigned Case Worker on the Utah Department of Corrections (a seperate entity) "O-Track" under "caution screen". Please note that the Board considers all information in the Department of Corrections inmate files, though the Board recieved the false allegations from Adult Probation and Parole in 2005. Upon discovery, Petitioner found that none of the Board "blue packets" Labrum v. Board of Pardons, 870 P.2d 902 (Utah 1993) contained the information, nor was the information communicated to him during the hearing. So he proceeded to try to acquire the information they failed to provide to him. Amongst the multiple attempts he also filed a GRAMA request and Board Chairperson Carrie Cochran responded to the Petitioners appeal of the GRAMA request denial wherein Petitioner was requesting all of the information that the Boards file contains. Her writttten response was that Petitioner "was given all the information the Board's file contains." In the State of Utah 3rd District Court, Case #190906706, Mr. Greg Johnson a member of the Board of Pardons, under sworn testimony stated "He was familiar with Mr. Wach's file and that Wach had been given all the information it contained." The Board's attorney Amanda Montague stated "The Board does not posess the record [Petitioner] seeks." in her argument on the 18th of April, 2019 in Case #19090676. After trying to acquire the information, over a period of years, Petitioner received a letter from Mr. Dennis Moxon the Director of Administrative Services of the Board of Pardons and Parole stating that the Board does have the information and have had it as early as 2005 in Petitioners file.

The documentation that Petitioner recieved from Mr. Dennis Moxon contatined a statement of the two items that were not disclosed during the parole violation hearing, nor was the information disclosed beforehand in the "blue packet" in which they are required to do. See Labrum v. Board of Pardons, 870 P.2d 902 (Utah 1993) A copy of the letter has been included in this argument, labled Exhibit #1. The documentation is the letter itself Petitioner received from Mr. Dennis Moxon. Mr. Dennis Moxon informed Petitioner the Board had information pertaining to Petitioner being a suspect in a homicide as one of the not previously disclosed items, a serious allegation in which Petitioner was never charged nor convicted of. The letter also states that the Board has been in posession of the information since 2005. The Board considered the allegations before the parole violation hearing, thus putting Petitioner in a suspect class, see 18 U.S.C.A. § 3553 (b) (i) 3742 (c) in which is recognized as unconstitutional, a violation of Petitioners right.

During the process, the Board (1) violated its own rules, (2) failed to provide Petitioner with the information that all five Board members had considered during the parole violation hearing, (3) failed to give Petitioner adequate notice of the information (4) failed to give Petitioner adequate representation based on the nature of allegations and the severity of the Boards ultimate decision, (6) failed to give Petitioner written factual basis and adequate rationale for its decision. and (7) withheld the information that influenced their decisions.

Due process requires the hearing officers and the decision makers to be neutral and detached. The person conducting the hearing should be unbiased and able to hear the matter without prejudgement, see Gagnon v. Scarpelli, 411 U.S. 778 (1973) and Morrissey v. Brewer 408 U.S. 471 (1972). The Board members were not unbiased and did not hear the matter without prejudgement as they were influenced by serious allegations that were hidden from the Petitioner by not providing it before, during or after the parole violaton hearing until Petitioner received it from Mr. Dennis Moxon years later. Please note that the two letters that were given to Petitioner during the 2014 hearing that Respondent notes in her argument did not contain the information in question.

Substantive due process protects individuals from the arbitrary and capricious actions of the government, see United States v. Rich, 708 F.3d 1135, 1139 (10th cir. 2013), United States v. Salerno, 480 U.S. 739, 746 (1987). Substantive due process prohibits the government from acting in a manner that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty" Salerno, 480 U.S. at 746 Under a substantive due process analysis, the government's action in question must be rational and not fundamentally unfair. Furthermore, "Due process demands a new trial when the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair." Padilla, 839 P.2d at 877, Vacco v. Quill 521 U.S. 793 (1997)

Please note that the Board is not immune United States v. Salerno, 480 U.S. 739, 746 (1987), see 983

F.3d 117, due to the fact that this case involves allegations of fraud and misrepresentations of the Board Chairperson Carrie Cochran and Greg Johnson. The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, see 983 F.3d 1178. Also, claims against state officials must show that the defendants "acted or failed to act through fraud or malice" under Code Ann 63-30-4 (3)(b)(i) F3.d 928. Due to the actions of the Board, Chairperson Carrie Cochran, Mr. Greg Johnson and their affiliates, are exempt from the qualified immunity doctrine as they willingly and knowingly broke the law in order to keep Petitioner incarcerated past the reasonably expected release date due to their misconduct (see Exhibit #2 for the reasonably expected release date). The court declared "The parole board is not outside the constitutional mandate that the actions of the government must sfford due proccess of law. This there is no question that Habeus Corpus review of the Board of Pardons actions is available." See Greenholtz 442 U.S. at 34

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known [983 F.3d 1178]

Perea v. Baca, 817 F.3d 1198, 1202 (10th cir. 2016)
Foote v. Spiegal, 118 F.3d 1416, 1423 (10th cir. 1997)
Dodos v. Richardson, 614 F.3d 1185, 1199 (10th cir. 2011)
Becker v. Kroll, 494 F.3d 904 (10th cir. 2007)
Mullenix v. Luna, 577 U.S. 7, 11, 136, s.ct.305, 193 L Ed 2d 253 (2015)
Fontenot v. Crow, 4F 4th 982 (10th cir. 2021)

The the Board sentenced Petitioner to be wrongfully incarcerated in the Utah State Prison for an additional 140 months in which 120 months have been served as of 2022 even though Petitioner is in prison on the charge of a Class A Misdemeanor violation of parole, in which is only a year maximum of incarceration. The misdemeanor was adjudicated by the district court as Time Served/Case Closed. Had Petitioner been provided adequate due process, in which the Board failed to do, he would have demonstrated the allegations against him are false. Being wrongfully incarcerated is considered cruel and unusual punishment. Under both state and federal constitutions individuals are protected from the government imposing sentences that are excessive or cruel and unusual under Utah Constitution Article 59
US Constitution Amendment 8 and 14
Coker v. Georgia, 433 U.S. 584 (1977)
Solem v. Helm, 463 U.S. 277 (1983)

In Solem, the United States Supreme Court declared that the cruel and unusual punishment clause of

the 8th amendment "Prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem 463 U.S. at 284 The court then held that "A criminal sentence must be proportionate to the crime for which the defendant has been convicted." 1d at 290.

Petitioners sentence is clearly excessive and extremely disproportionate to the parole violation committed. The prisons assessment guideline was at the maximum hold per Exhibit 2 at 0 to 18 months. As of this submission Petitioner has served 120 months.

Under both state and federal cruel and unusual punishment analysis, the appellate courts look at the following factors to determine whether a sentence is disproportionate:
   i. The gravity of the offense and the harshness of the penalty;
   ii The sentences imposed on other criminals in the same jurisdiction; and
   iii. The sentences imposed for commission of the same crime in other jurisdictions.

See: Bishop 717 P2.d at 269 (citing Solem, 463 U.S. at 292)
See also: Coker v Georgia, 433 U.S. 584 (1977)

Wrongful incarceration is cruel and unusual punishment and the actions of the Board caused harm to Petitioner through:
   Loss in a financial nature in 120 months of Journeyman Welders pay.
   Emotional distress in suffering 120 months in a prison environment.
   Emotional distress in seperation from family for an additional 120 months, and is expecting the his mother to pass away soon per their family physician.
   The board asserting false and defamatory allegations against Petitioner.
   The negative consequences of incarceration, such as PTSD and isolation
   Intentionally or recklessly causing injury to plaintiff by misusing government power.
Livsey v. Salt Lake County, 275 F.3d 952, 957-58 (10th cir. 2001)

Plaintiff had filed a Rule 65B (d) petition against the Board and its members asserting both procedural and substantive due process claims, equal protection claims, cruel and unusual punishment claims, and various open court claims. The 3rd District Court eventually granted summary judgement for the Board and its members, denying the Petitioners motions for summary judgement. The summary was granted despite the Board Member Greg Johnson's sworn testimony, as previously noted, proved to be false. The Boards attorney Amanda Montague plainly admitted and conceded in open court that Petitioners Constitutional Rights were violated she is quoted saying , but moved to dismiss due to their argument that Petitioner wasn't harmed by the wrongful incarceration. The record of Amanda Montague's admittance of the Boards guilt is on transcript in the Utah State

3rd District Court with Judge Hruby-Mills presiding: Case #190906706. She stated "The Board did violate Mr. Wachs rights... But he cant prove harm."

Petitioner set forth numerous claims upon which relief may be granted. Petitioner stated numerous grounds upon which relief may be granted if proven. Specifically Petitioner asserts that the Board of Pardons (1) Relied upon serious and false information in the decision making process. (2) Was improperly influenced by the serious, unfounded, and unsupported allegations that falsely accuse him of criminal conduct of which he was never charged or convicted and to which he was unable to defend himself against the Board. (3) Failed to provide him with adequate notice of the allegations used against him. These claims are clearly recognizeable under Amendments 5, 6, 8 and 14 of the United States Constitution. Please see:

Farmer v Brennan, 511 U.S. 825, 861, 114 srt. (1970)
Helling v. Mckinney 509 U.S. 25, 42, 113 srt.
Wright v. Mcmann 387 F 2d 519 (CA 2 1967)
Estell v. Gamble 429 U.S. 97, 97 s.ct. C. Ed 2d 251 (1996)

Petitioner can state a claim against the Board members as they are not immune to the law. No one is above the law, see Scheuer v. Rhodes, 416 U.S. 232. Individuals are also protected from the arbitrary and capricious actions of the government see United States v. Rich, 708 F.3d 1135, 1139 (10th cir. 2013) citing United States v. Salerno, 480 U.S. 739, 746 (1987) "Immunity is waived when a government employees acts or omission constitutes misconduct. Willful misconduct is the intentional doing of a wrongful act or the wrongful failure to act. Without just cause or excuse, when the actor is aware that the actors conduct will probably result in injury." In Foote, 808 P.2d at 735 it is stated "It is the providence of the judiciary to assure that a claim of the denial of due process by a arm of the government be heard and if justified, that it be vindicated.

With this argument presented, we respectfully ask the Honorable Judge Dale Kimball to grant Petitioner relief in the form of: Immediate release from custody and termination of sentence.

Thank you,

Dated this day 22nd of December 2022

X_____

EXHIBITS:

1. **Letter from Mr. Dennis Moxon**
   **Brief description:** Letter from Mr. Dennis Moxon the Director of Administrative Services of the Board of Pardons and Parole stating that there was in fact two items not disclosed to Petitioner prior to reciept of the letter.
2. **Offender Assessment Form**
   **Brief description:** An assesssment form that the Department of Corrections utilizes and the Board looks at in which contains a reasonably expected amount of time to be served.
3. **65B Hearing Memorandum**
   **Brief description:** Petitioners Case #19090676

Carrie L. Cochran
*Chair*

Clark A. Harms
*Member*



Greg E. Johnson
*Member*
Angela F. Micklos
*Member*
Denise M. Porter
*Member*

## STATE OF UTAH
## BOARD OF PARDONS AND PAROLE

Paul M. Wach, Offender # 27714
Utah State Prison
P.O. Box 250
Draper, UT 84020

May 31, 2019

Mr. Wach:

After further review of your case file, we have determined that there are two items where it is appropriate to make disclosure to you differently.

In the first instance, a report that was summarized by Adult Parole and Probation (AP&P) should have also been summarized by the Board. We now provide you the summary as follows:

> In conjunction with the Parole Violation Report received from AP&P on September 14, 2005, the Board received a confidential report. That report contains statements from a confidential informant that he or she had information that Mr. Wach had been involved with the murder of his ex-wife.
>
> The Board attempted to follow up on this information and found that no charges have been filed and Mr. Wach has no convictions for murder.

In the second instance, an August 8, 2011 email from Dona Campagna was withheld and summarized because she reported being fearful of Mr. Wach. The Board has since received several pieces of correspondence of a negative nature from Ms. Campagna, for which she did not request confidentiality, all of which have been fully disclosed. After comparing the August 8th email with more recent correspondence, the Board sees no reason to maintain its confidentiality. Accordingly, a slightly redacted copy of the August 8, 2011 email is attached.

The Board will give you an opportunity to respond to these new disclosures, if you choose to do so. Please send your written response within 14 days of receipt of this letter.

Regards,

Dennis K. Moxon
Director of Administrative Services

| INMATE'S CURRENT HOUSING ASSIGNMENT: _____ | UTAH STATE DEPARTMENT OF CORRECTIONS<br>DIVISION OF INSTITUTIONAL OPERATIONS<br>OFFENDER ASSESSMENT / REASSESSMENT FORM | DRAPER ☐<br>CUCF ☐<br>INITIAL ☐ | SCHEDULED ☐<br>TRO ☐<br>POST BOARD ☐<br>ADMINISTRATIVE ☐ |
|---|---|---|---|

INMATE NAME _____  OFFENDER # _____

COMPLETED BY _____ DATE _____ CURRENT CLASSIFICATION CODE [ ][ ][ ]

## SECTION A - SECURITY SCORE                                             SCORE

1. Severity of current crime
   Crime: _____
   *** Life / Life without Parole .................................. 7
       First Degree (5 - Life) ...................................... 6
       Second Degree (1 - 15) ..................................... 4
       Third Degree (0 - 5) ........................................ 2
       Class A Misdemeanor ....................................... 1
                                                                         (1)

2. Expected Length of Incarceration *
   Expected Release Date ____/____/____
   Commitment Date ____/____/____ Difference (Months) ____
       Over 120 Month .............................................. 7
       85-119 Months .............................................. 6
       37-84 Months ............................................... 5
       19-36 Months ............................................... 3
       0-18 Months ................................................ 1
                                                                         (2)

3. Criminal Violence History (Not Including Present Offense)
       Recent (Within 5 years) ..................................... 7
       Past (Over 5 years) ........................................ 3
       None ......................................................... 0
                                                                         (3)

4. Escape History (Must Be Convicted)
       Recent (Within 5 years) ..................................... 7
       Past (Over 5 years to 15 years) ........................... 3
       More than 15 years ......................................... 1
       None ......................................................... 0
                                                                         (4)

5. Prior Institutional Commitments (Not Including Present Commitment)
       Three or more commitments ................................. 7
       Two commitments ........................................... 5
       One commitment ............................................ 3
       No previous commitments .................................. 0
                                                                         (5)

6. Age   D.O.B. ____/____/____
       Under 29 ..................................................... 3
       29 or older .................................................. 0
                                                                         (6)

7. History of Institutional Adjustment (Previous Incarcerations Only)
   Severe Problems
       Within past 2 incarcerated years .......................... 7
       More than 2 incarcerated years ........................... 3
   Moderate Problems
       Within past 2 incarcerated years .......................... 3
       More than 2 incarcerated years ........................... 1
   No Problems ..................................................... 0
                                                                         (7)

8. Substance Abuse History (Alcohol and/or Drugs)
       History of abuse ............................................. 3
       No history of abuse ........................................ 0

TOTAL SECURITY SCORE (A) _____

## SECTION B - CUSTODY LEVEL ADJUSTMENT SCORE                          SCORE

a. Time left to Serve
     121 or more months ........................................... 14
     86 - 120 months .............................................. 12
     61 - 85 months ................................................ 9
     37 - 60 ......................................................... 5
     19 -36 .......................................................... 3
     0 -18 ........................................................... 0
                                                                         (a)

b. Most Serious Major Disciplinary Convictions Past 12 months.
   (This incarceration only)
     Greatest severity .......................... ( A ) ............... 7
     High Severity ............................... ( B ) ............... 5
     Moderate severity ......................... ( C ) ............... 3
     Low severity ................................ ( D ) ............... 1
     None ............................................................. 0
                                                                         (b)

c. Number of Major Disciplinary Convictions Past 12 Months.
   (This incarceration only)
     4 or more reports ........................................... 5
     2 - 3 reports ................................................. 3
     1 report ....................................................... 1
     No reports ................................................... 0
                                                                         (c)

d. Substance Abuse History Past 12 Months (Alcohol and/or Drugs)
   (Not restricted to just this incarceration)
     History of abuse ........................................... 3
     No history of abuse ....................................... 0
                                                                         (d)

e. OMR / OMP Recommendations
     Non - Compliant ............................................ 3
     Fair ............................................................. 2
     Excellent ...................................................... 0
                                                                         (e)

f. Job Past 12 Months
   (This incarceration only)
     Poor / No reports ........................................... 3
     Fair ............................................................. 2
     Good ........................................................... 1
     Excellent ...................................................... 0
                                                                         (f)

g. Program / Education Past 12 Months
   (This incarceration only)
     Poor ............................................................ 3
     Fair ............................................................. 2
     Good ........................................................... 1
     Excellent ...................................................... 0
                                                                         (g)

TOTAL CUSTODY LEVEL ADJUSTMENT SCORE (B) _____

## ASSESSMENT SECURITY LEVEL

| (SECTION A) | | (SECTION B SCORES) | | | |
|---|---|---|---|---|---|
| | (TIGHTER) | (SAME) | (LESSER) | BEHAVIOR | |
| SECURITY SCORE | REDUCTION | CONTINUE | INCREASE | CLASSIFICATION | |
| A  41-48 | 23-38 | 12-22 | 0-11 | K | |
| B  33-40 | 25-38 | 15-24 | 0-14 | O | |
| C  8-32 | 26-38 | 17-25 | 0-16 | S | |
| D  2-7 | 27-38 | 19-26 | 0-18 | | |

ADJUSTED CLASSIFICATION CODE [ ][ ][ ]

OVERRIDE REASONS   (Enter number of Override here) _____
1. Severe Management Problem   ☐ Escape
2. Notoriety
3. Executive Director Override
4. Safety
5. Developmental Disability, Psychological, Medical

____/____/____
CA APPROVAL DATE

CA APPROVED CLASSIFICATION CODE [ ][ ][ ]

CHALLENGE:
☐ 1    ☐ 2

PROCEDURAL CONDITIONS
☐ Detainer   ☐ Death Penalty / LWOP   ☐ More than 36 mos. to release

* Time Scores are rounded to the nearest 1/2 point
(revised 09/01/06)
WH/E14

COPY DISTRIBUTION:   WHITE-Inmate File   CANARY-CRO   PINK-Inmate   GOLD-Assignment Office

*Exhibit 3a*

*(2-sided Document)*

record." Attached at Exhibit 1. On July 17, 2018, the Board granted Petitioner a fee waiver for the requested records and provided 338 pages of responsive records. Letter from the Board is attached at Exhibit 2.

On November 30, 2018, Petitioner sent an appeal to then Chair Chyleen Arbon. He asked for "Information not previously disclosed in prior requests and <u>all</u> information utilized by the Board at the Dec. 2014 Parole Revocation Hearing. Attached at Exhibit 3. The Board responded, "we have sent you the **entire** copy of your Board packet on numerous occasions. We have disclosed any and all information that have in your file. . ." Letter attached at Exhibit 4.

On December 14, 2018, Petitioner filed his Petition for Judicial Review, arguing he had fully exhausted his administrative remedies and asked the Court for "a review of the claims before [it]." In previous requests for judicial review, Petitioner has claimed that the Board has not disclosed all the records it relied on at his 2014 hearing. Specifically, he has maintained that the Board file must contain "caution screens" prepared by the Department of Correction, but those have never been disclosed to him.

## ARGUMENT

Petitioner asserts he has not received all information the Board relied on at his 2014 hearing. This is not true. The letters Petitioner received from the Board in response to his GRAMA requests, as well as the Declaration of Greg Johnson,[1] dated November 17, 2017, all say that Petitioner has received a full disclosure of the "information" in his Board file.

---

[1] This Declaration was attached to Respondent's Motion for Summary Judgment, filed November 20, 2017. For convenience, it is attached to this Memorandum at Exhibit 5.

2

The Board has disclosed every "record" it possesses which is responsive to Petitioner's request. Specifically, the Board has provided Petitioner with copies of every disclosure packet it made to him previously pursuant to *Labrum v. Board of Pardons*, 870 P.2d 902 (Utah 1993).[2] There are no other responsive records in Petitioner's file.[3] The Board affirmatively and unequivocally asserts that the Board file does not contain any "caution screens" created by the Department of Corrections. They are not in the records that were disclosed to Petitioner and they are not in the materials which were not part of Petitioner's disclosure packets. They were not withheld as confidential reports or as records that do not contain "information." The Board simply does not possess any "caution screens" regarding Petitioner.

"In response to a request, a governmental entity is not required to: create a record." Utah Code Ann. § 63G-2-201(8)(a)(i). Additionally, a governmental entity is not required to obtain a record from another agency in order to disclose it to a requestor. *See State v. Spry*, 2001 UT App 75, ¶ 16, 21 P.3d 675.

---

[2] The disclosures required by *Labrum* are greater than disclosure that would be required by GRAMA because the Board is required to disclosed "private," "protected," and "controlled" documents to offenders except in limited circumstances.

[3] A Board file also contains other documents that are not disclosed to the offender because they do not contain information about the offender that is relevant to the decision-making. Petitioner's file is no different. It contains administrative records, i.e., emails and memos about scheduling, status of the case, or other administrative matters related to the file; notices to victims of upcoming hearings; sign in sheets at hearings; signed acknowledgements by Petitioner that he received disclosure packets; and confidential reports (summaries of which are provided to the offender). A Board file also contains documents that are not "records" under Utah Code Annotated §63G-2-103(22)(b)(xi)(C) because they contain "a note or internal memorandum prepared as part of the deliberative process by a member of the Board of Pardons and Parole." These documents, which contain recommendations by hearing officers or Board members, comments by Board members, and votes of Board members, are outside of GRAMA.

*3C*

*[handwritten: until 31-May-19 when Board admits they do...]*

The Board does not possess the record Petitioner seeks. The Board is not required to create the record or obtain the record from the Department of Corrections. Therefore, the Petition for Judicial Review must be denied.

DATED this 18th day of April, 2019.

/s/ Amanda N. Montague
AMANDA N. MONTAGUE
Assistant Attorney General

3 d.

## CERTIFICATE OF MAILING

I certify that I mailed a true and correct copy of the foregoing, HEARING MEMORANDUM, was mailed postage prepaid, on this 18th day of April, 2019, to the following:

Paul Wach
Inmate# 27714
Utah State Prison
PO Box 250
Draper, UT 84020

/s/ Cecilia Rojas
Legal Secretary

Exhibit 3 E

2007 for every hearing thereafter.[2]

As Petitioner has discussed, he subsequently made GRAMA requests for his UDC "cautions." In case 160907869, Petitioner made a GRAMA request of the Board. He asked for "A certified copy of all information utilized in the decision making process paper, ephemera, and all other types used by the Board of Pardons regarding my parole revocation hearing Dec. 2014." *See* Decision and Order Denying GRAMA Appeal in Case 160907869, entered June 11, 2019. The Board then provided Petitioner 338 pages. *Id.* Petitioner disputed this was all the information utilized by the Board. *Id.* The Board Chair responded that they had disclosed the entire copy of his Board file. *Id.*[3] Petitioner appealed that denial the trial court, asserting the Board file contained his "cautions" and those had not been disclosed. The trial court held an evidentiary hearing on this matter. It considered an audio recording from the State Records Committee of Petitioner's appeal of the *Department of Corrections* denial of his GRAMA request for his cautions. It also considered testimony from Greg Johnson, the administrative coordinator of the Board of Pardons. *See* Decision and Order Denying GRAMA Appeal, attached to this Reply as

---

[2] Pursuant to Utah Rule of Administrative Procedure R671-303-1(1)(c) "The Board will provide an offender with a copy of the records not provided for previous hearings and contained in the offender's file at least three days prior to any personal appearance hearing in which a parole or release date may be fixed or extended by the Board." The Board does not redisclose materials it has previously provided without a specific request from the offender to do so. It expects the offender to maintain a copy of the records he/she receives.
This rule is also relevant to Petitioner's assertion that he received a substantial number of documents in response to his GRAMA request. He believes these had not been provided previously because he had never received such a large disclosure in the past. The reason he had not previously received such a substantial disclosure was because the Board was only providing him with new information in advance of each hearing.

[3] Thus, the Board did not only provide the new materials it received prior to the 2014 hearing, it redisclosed the entire file.

16

# CERTIFICATE OF MAILING

I DO HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING: PETITIONERS RESPONSE TO RESPONDENTS MOTION TO DISMISS AND MEMORANDUM IN SUPPORT WAS MAILED U.S. MAIL POSTAGE PREPAID TO THE FOLLOWING:

DISTRICT OF UTAH
OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
351 SOUTH WEST TEMPLE
SALT LAKE CITY, UT 84101

-AND-

AMANDA N. MONTAGUE (9941)
ASSISTANT ATTORNEY GENERAL
160 EAST 300 SOUTH
P.O. BOX 140812
SALT LAKE CITY, UT 84114-0856

DATED THIS 22nd of DECEMBER, 2022

X_____

PAUL M. WACH

From: M. WACH #2270111
U.S.C.
P.O. Box 165300
S.L.C., UT. 84116

LEGAL MAIL

District of Utah
Office of the Clerk
United States Courthouse
351 South West Temple
Salt Lake City, Utah
84101



LEGAL MAIL

UTAH STATE PRISON
MAIL UNIT
DEC 28 2022